RECEIVED

MAR - 4 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| YUCAIPA CORP. INITIATIVES FUND, ILP | CIVIL ACTION NO.  14-0609 |
| VERSUS | JUDGE DOHERTY |
| PICCADILLY RESTAURANTS, LLC, ET AL | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before the Court are the following: (1) Appeal of the Findings of Fact, Conclusions of Law, and Order Confirming the First Amended Joint Chapter 11 Plan entered by the United States Bankruptcy Court for the Western District of Louisiana on February 13, 2014 (hereinafter referred to as the "Confirmation Order") of Piccadilly Investments, LLC, Piccadilly Restaurants, LLC, and Piccadilly Food Services, LLC hereinafter referred to collectively as "the debtors" or "Piccadilly") filed by Yucaipa Corporate Initiatives Fund I, LP ("Yucaipa"); (2) "Motion to Dismiss Appeal on Grounds of Equitable Mootness" [Doc. 50] filed by Atalaya Administrative LLC, Atalaya Funding II LP, Atalaya Special Opportunities Fund IV LP (Tranche B), and Atalaya Special Opportunities Fund Cayman IV LP (Tranche B) (collectively, "Atalaya"); and "Motion to Dismiss Appeal of Confirmation Order on Grounds of Equitable Mootness" [Doc. 56] filed by The Official Committee of Unsecured Creditors (the "Unsecured Creditors"). For the following reasons, this Court GRANTS the Motions to Dismiss Appeal filed by Atalaya and the Unsecured Creditors, and, therefore, does not reach the merits of the debtors' appeal, which is hereby DISMISSED.

**I.    Background**

The following facts were set forth by this Court in its ruling on the previously-filed Motion

to Stay [Doc. 4], filed by Yucaipa, and are set forth by way of background only:

- On September 11, 2012, Piccadilly filed three Chapter 11 cases[1] in the United States Bankruptcy Court for the Western District of Louisiana, Lafayette Division. Piccadilly has continued to conduct its business operations as debtors and debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

- Yucaipa is both the majority holder of equity interests in what Yucaipa refers to as "PI,"[2] and a general unsecured creditor on account of its Management Services Fee Claim, which has been scheduled by the Debtors in the amount of $452,791.18.

- On October 23, 2012, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

- On November 14, 2013, Atalaya and the Committee filed the "First Amended Joint Chapter 11 Plan of Piccadilly Investments, LLC, Piccadilly Restaurants, LLC, and Piccadilly Food Service, LLC, Proposed by the Atalaya entities and the Committee of Unsecured Creditors."

- On December 13, 2013, Yucaipa, Atalaya, and the Committee exchanged valuation expert reports prepared by their experts.

- On January 6, 2014, Yucaipa filed an objection to the First Amended Joint Chapter 11 Plan Proposed by Atalaya Administrative LLC and the Official Committee of Unsecured Creditors (the "Plan Objection") and an objection to the Asserted Claim of Atalaya (the "Claim Objection"). On January 31, 2014, Yucaipa filed a memorandum in support of its objection; an amended memorandum was filed on February 3, 2014.

- The bankruptcy court issued its oral ruling on Yucaipa's objections in open court on February 4, 2014, and on February 13, 2014, the bankruptcy court entered the written Confirmation Order, confirming the Plan and specifically officially overruling Yucaipa's objections to plan confirmation.

- On February 27, 2014, Yucaipa filed its "Notice of Appeal of Order Confirming the First Amended Joint Chapter 11 Plan of Piccadilly Investments, LLC, Piccadilly Restaurants, LLC, and Piccadilly Food Service, LCC" (the "Appeal"). Also on

---

[1] Based upon the record of this matter, there are three pending bankruptcy cases underlying the instant motion: *In re Piccadilly Restaurants, LLC*, 12-51127 (Bankr. W.D. La. 2012), *In re Piccadilly Food Service, LLC*, 12-51128 (Bankr. W.D. La. 2012), and *In re Piccadilly Investments, LLC*, 12-51129 (Bankr. W.D. La. 2012).

[2] This Court assumes "PI" is a reference to Piccadilly Investments, however, as no clarifying information has been provided heretofore, it remains unclear to what "PI" refers.

February 27, 2014, Yucaipa filed a motion to stay the appeal in bankruptcy court, as well as a motion for expedited hearing on the motion to stay. Atalaya and the Committee of Unsecured Creditors both objected to the motion to stay, and on March 10, 2014, the bankruptcy court denied Yucaipa's motion to stay the appeal.

- Yucaipa's appeal of the bankruptcy court's confirmation of the plan was filed in this Court on February 21, 2014, and the motion to stay the matter on appeal was filed in this Court on the same date.

- This Court declined to stay the matter while the appeal was pending, concluding Yucaipa failed to establish it was entitled to a stay. *See* Memorandum Ruling, Doc. 53.

- On April 15, 2014, on motion of Yucaipa, the bankruptcy court approved certain immaterial modifications to the First Amended Plan.

Yucaipa filed its appellate brief in this matter on April 15, 2014, however, on May 16, 2014, Atalaya moved to dismiss Yucaipa's appeal [Doc. 50], and on May 15, 2014, the Unsecured Creditors filed a stand-alone motion to dismiss the appeal [Doc. 56].

## II.   Applicable Law

### 1.   Standard of Review

As a practical matter, this Court will consider the motion to dismiss the pending bankruptcy appeal before deciding whether to take up the matter of the bankruptcy appeal itself. Ergo, this Court must determine the standard of review to be applied to the findings of the bankruptcy court when considering the pending motion to dismiss the appeal. For purposes of both the appeal and the motion to dismiss the appeal, Yucaipa frames all of the bankruptcy court's decisions as errors of law, entitling Yucaipa to *de novo* review of those alleged errors. *In re Bass*, 171 F.3d 1016, 1021 (5th Cir. 1999). In response, Atalaya and the Unsecured Creditors argue all alleged errors are *factual* errors that turn on the bankruptcy's court's findings regarding the valuation of the debtors – which formed the basis of the plan confirmation order – and the bankruptcy court's approval of a settlement

3

resolving secured creditor claims held by Atalaya, which was a feature of the plan of reorganization. Atalaya and the Unsecured Creditors argue the bankruptcy court's findings of fact regarding asset valuation, as well as the factual premises relied upon in connection with such asset valuations, are reviewed for clear error. *In re T-H New Orleans Limited Partnership*, 116 F.3d 790, 799 (5th Cir. 1997).  Atalaya and the Unsecured Creditors also argue the bankruptcy court's approval of the settlement of Atalaya's claims contained in the plan is reviewed on appeal for an abuse of discretion. *In re Cajun Elec. Power Co-op, Inc.*, 119 F.3d 349, 355 (5th Cir. 1997) ("We review the district court's decision to approve the settlement for an abuse of discretion.").

This Court will afford no deference to legal conclusions but rather, will analyze them anew, however, clear error must be shown before this Court will reverse a finding of fact. *In re San Patricio County Community Action Agency*, 575 F.3d 553, 557 (5th Cir. 2009).  Mixed questions of law and fact receive *de novo* review. *Id.*, citing *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 583 (5th Cir.2008).

In the instant case, this Court agrees with Atalaya and the Unsecured Creditors that the decisions of the bankruptcy court were factual in nature and are, therefore, entitled to deference. Therefore, this Court reviews the decisions of the bankruptcy court for clear error.

2.      **Legal Analysis**

Atalaya and the Unsecured Creditors seek dismissal of Yucaipa's appeal under the doctrine of equitable mootness, which centers upon the concern that only live cases or controversies be decided by our courts.  In *In re Manges*, the court explained:

> A controversy becomes moot in the traditional sense when, as a result of intervening circumstances, there are no longer adverse parties with sufficient interests to maintain the litigation. Many courts, including our own, however, have employed the concept

4

of "mootness" to address equitable concerns unique to bankruptcy proceedings.  In this context, "mootness" is not an Article III inquiry as to whether a live controversy is presented; rather, it is a recognition by the appellate courts that there is a point beyond which they cannot order fundamental changes in reorganization actions. Consequently, a reviewing court may decline to consider the merits of a confirmation order when there has been substantial consummation of the plan such that effective judicial relief is no longer available—even though there may still be a viable dispute between the parties on appeal.

29 F.3d 1034, 1038-39 (5th Cir. 1994) (internal citations omitted).  The Fifth Circuit has historically examined three factors in making the assessment of equitable mootness, to wit: (1) whether a stay has been obtained; (2) whether the plan has been "substantially consummated;" and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan.  *Manges*, 29 F.3d at 1039, *citing Ronit, Inc. v. Stemson Corp. (In re Block Shim Dev. Co.)*, 939 F.2d 289, 291 (5th Cir.1991); *Cleveland, Barrios, Kingsdorf & Casteix v. Thibaut*, 166 B.R. 281, 286 (E.D. La.1994).  This Court examines each factor in turn.

### a.    Whether a stay has been obtained

The Fifth Circuit has recognized that an appellant's failure to obtain a stay pending appeal is a crucial element of the equitable mootness analysis, noting that "in many instances, the reviewing court's decision whether to grant a stay is essentially dispositive of the case." *Matter of Manges*, 29 F.3d 1034, 1040 (5th Cir. 1994).  When assessing whether an appeal has become equitably moot, the Fifth Circuit has noted, "a stay not sought, and a stay sought and denied, lead equally to the implementation of the plan reorganization." *In re Berryman Products, Inc.*, 159 F.3d 941, 944-45 (5th Cir. 1998), *citing Manges*, 29 F.3d at 1040.

In the instant case, Yucaipa twice sought a stay, both in the bankruptcy court and in this court, and a stay was denied both times.  Importantly, in this Court's ruling on Yucaipa's previous

motion to stay, this Court denied a stay, in part, because it noted Yucaipa had not demonstrated a likelihood that it would prevail on the merits of its appeal. Yucaipa has a particularly high burden with respect to this factor under the analysis of the current motion, as the bankruptcy court's confirmation of the Plan (over the same objections Yucaipa is currently raising) was based upon factual findings made after examination of the extensive bankruptcy record and after consideration of the competing testimony of expert witnesses. The bankruptcy court confirmed the Plan only after scrutinizing the record and hearing competing testimony from the expert witnesses proffered by the opposing sides. After engaging in this exhaustive process, the bankruptcy court determined Yucaipa's equity had no value and the Plan's treatment of Yucaipa was appropriate. The bankruptcy court further concluded Deloitte's valuation analysis (which favored Atalaya and the Unsecured Creditors) was the most credible and most closely tracked Piccadilly's actual performance, while specifically concluding Yucaipa's valuation analysis was not credible for many reasons, including the fact that it relied upon unreasonable and outdated financial projections and failed to correct mathematical and calculation errors. Thus, the bankruptcy court declined to stay the matter when requested to do so, and this Court did as well, concluding the bankruptcy court had engaged in a deliberate and thorough analysis of the evidence, which, upon first blush, was not likely to be overturned on appeal.[3]

Considering that Yucaipa has twice sought a stay in this matter and has failed to obtain one, this Court concludes that the first factor favors dismissal of the instant appeal.

---

[3] Additionally, as has been touched on briefly in this Ruling, although Yucaipa frames the bankruptcy court's alleged errors as "errors of law," as it did in its prior Ruling, this Court notes Yucaipa's allegations were and are were simply challenges to the bankruptcy court's factual findings, including findings concerning proper valuation methodology, financial projections, and the enterprise value of the debtors.

### b.  Whether the plan has been "substantially consummated"

The second factor to be considered is whether the Plan has been "substantially consummated." The statutory definition of "substantial consummation" is as follows:

(A)  transfer of all or substantially all of the property proposed by the plan to be transferred;

(B)  assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C)  commencement of distribution under the plan.

11 U.S.C. §1101(2). In *Manges*, the Fifth Circuit explained it "has borrowed the 'substantial consummation' yardstick [to analyze equitable mootness] because it informs our judgment as to when finality concerns and the reliance interests of third parties upon the plan as effectuated have become paramount to a resolution of the dispute between the parties on appeal." 29 F.3d at 1041. This standard "requires only 'substantial consummation,' not absolute or complete consummation." *In re GWI PCS I Inc.*, 230 F.3d 788, 802 (5th Cir. 2000).

Atalaya and the Unsecured Creditors argue all of the elements necessary for substantial consummation of the Plan have occurred, as follows:

- The Reorganized Debtors borrowed approximately $7.3 million pursuant to the Exit Facility furnished under the Plan;

- More than $4.3 million was disbursed to the Debtors' administrative and priority creditors, consistent with the Plan;

- More than $1.6 million was disbursed to or for the benefit of the Debtors' general unsecured creditors, pursuant to the Plan;

- Atalaya's existing loan documents were cancelled, and Atalaya received new Term and Revolving Notes in satisfaction of its secured claims;

- Yucaipa's pre-petition equity interests in the Debtors were canceled, and 100% of the equity in the Reorganized Debtors was issued to Atalaya as part of the Plan's conversion of $9.0 million of Atalaya's prepetition secured claim into equity of the

7

Reorganized Debtors;

- New managing members of the Debtors were appointed;

- The Committee was dissolved; and

- Property of the Debtors' estates was reinvested in the Reorganized Debtors.

Thus, Atalaya argues substantially all of the property proposed to be transferred and all pre-petition equity interests in Piccadilly proposed to be canceled under the Plan were transferred and canceled on April 17, 2014, the Effective Date of the Plan, and substantially all of the material distributions to be made under the Plan have been completed.   Yucaipa does not dispute the foregoing in its opposition brief.

Considering the foregoing evidence presented by Atayala and the Unsecured Creditors, this Court concludes the Plan has been "substantially consummated," and the second factor favors dismissal of the instant appeal.

      **c.**      **Whether the relief requested would affect either the rights of parties not before the court or the success of the plan**

The third and final factor to be considered is whether the relief requested would affect the rights of parties not before the court or the success of the plan.  In *Manges*, the court explained: " . . . it is the reliance interests endangered by the plan, coupled with the difficulty of reversing critical transactions, that counsels against attempts to unwind things on appeal." 29 F.3d at 1040.  The concept of equitable mootness protects the interests of non-adverse third parties who are not before the appellate court but who have acted in reliance upon the plan as implemented.  *Id.*

Atalaya and the Unsecured Creditors argue on or shortly after the Effective Date of the Plan, Piccadilly received new capital to operate the businesses; entered into agreements with third parties;

canceled the old Yucaipa equity interests; and issued new equity interests to Atalaya. Atalaya and the Unsecured Creditors argue that without the capital infusion from the Plan, and the implementation of the transactions contemplated by the Plan, Piccadilly would have stopped operations, closed its restaurants, and laid off employees. Atalaya and the Unsecured Creditors argue to unravel the Plan at this late date would destroy the livelihoods of numerous employees and trade creditors, many of which are small, locally-operated businesses that depend on receiving their distributions under the confirmed Plan.

In response, Yucaipa argues only Atalaya – and no other party – will be affected by a redistribution of the equity Atalaya received under the Plan to old equity holders, which is the only remedy Yucaipa seeks in reversal. However, Yucaipa does not dispute Atalaya's argument that third parties, such a trade vendors not before the Court, entered into ordinary business transactions with Piccadilly and relied in good faith on the Plan in engaging in these post-confirmation transactions, many of which are irreversible. Atalaya argues it would be impossible to restore the *status quo* as it existed before the confirmation, and Yucaipa does not dispute this.

After consideration of the foregoing, this Court concludes to the extent trade vendors entered into post-confirmation transactions with Piccadilly, which allowed Piccadilly to continue operations, keep restaurants running, and employ personnel, such actions are irreversible and militate in favor of dismissing Yucaipa's appeal. In this Court's view, such transactions are the type of interests that should be protected by courts after a plan confirmation. As the Fifth Circuit stated in *Manges*, the concept of equitable mootness protects the interests of non-adverse third parties who are not before the appellate court but who have acted in reliance upon the plan as implemented. 29 F.3d at 1040. In the instant case, this Court concludes the relief requested by Yucaipa in its appeal would affect

the interests of these third-party vendors who have entered into contracts and/or transactions with Atalaya and the Unsecured Creditors in good faith in an effort to keep Piccadilly afloat during the plan confirmation process.  Thus, after careful consideration of the parties' arguments on this point, this Court concludes this factor weighs in favor of dismissal of the instant appeal.

## III.    Conclusion

Considering the foregoing, the "Motion to Dismiss Appeal on Grounds of Equitable Mootness" [Doc. 50] filed by Atalaya Administrative LLC, Atalaya Funding II LP, Atalaya Special Opportunities Fund IV LP (Tranche B), and Atalaya Special Opportunities Fund Cayman IV LP (Tranche B) and the "Motion to Dismiss Appeal of Confirmation Order on Grounds of Equitable Mootness" [Doc. 56] filed by The Official Committee of Unsecured Creditors are GRANTED, and the  Appeal of the Findings of Fact, Conclusions of Law, and Order Confirming the First Amended Joint Chapter 11 Plan entered by the United States Bankruptcy Court for the Western District of Louisiana on February 13, 2014 (hereinafter referred to as the "Confirmation Order") of Piccadilly Investments, LLC, Piccadilly Restaurants, LLC, and Piccadilly Food Services, LLC filed by Yucaipa Corporate Initiatives Fund I, LP is hereby DISMISSED.

THUS DONE AND SIGNED in Lafayette, Louisiana on this _____4_____ day of March, 2015.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE